**In the United States Bankruptcy Court
For the Eastern District of Pennsylvania**

In re                              : Chapter 11
                                   :
Stone Creek Mechanical, Inc.       :
                                   :
              Debtor(s)            : Bankruptcy No. 04-11255 SR

---

# <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

**<u>Introduction</u>.**

Before the Court is the Creditors Committee's Motion to
Compel Enforcement of the Debtor's settlement of its delay damage
claim against the Pennsbury School District.  International
Fidelity Insurance Company (IFIC) opposes the Motion.  A hearing
on the matter was held on November 9, 2006.  The parties were
allowed to submit briefs after which the Court took the matter
under advisement.  For the reasons set forth below, the
Committee's Motion will be granted.[1]

**<u>Factual Background</u>**

The Debtor was an HVAC contractor.  Motion to Compel, ¶
2.  Prepetition, it had contracted with the Pennsbury School
District (the District) to install an HVAC system at the Manor

---

[1]The Court has jurisdiction to hear this matter because IFIC is
essentially asserting a lien (equitable or otherwise) against funds
which are property of the estate.  *See* 28 U.S.C. § 157(b)(2)(K)
(listing among core proceedings determination of the validity, extent
or priority of liens)

Elementary School (the Manor job). *Id.*, ¶ 4. The contract price
was approximately $2 million.[2] *See* Committee Brief, Ex. A. The
Debtor would receive progress payments and the District would
retain a certain percentage pending completion. The contract
required the Debtor to post a performance and payment bond in the
contract amount. The Debtor obtained such bonds from IFIC and
executed an Indemnity Agreement as IFIC required. *See id.*,
Exhibits A, B.

After the bankruptcy was filed, IFIC would learn that
instead of paying its subcontractors on the Manor job and others,
the Debtor had diverted progress payments elsewhere. *See* IFIC's
Motion for Relief from Stay or Adequate Protection, ¶ 12. This
caused the Debtor's subs and suppliers to file claims on the
payment and performance bonds which IFIC had issued. *Id.* To
limit its exposure, IFIC obtained from this Court an order of
adequate protection requiring that any remaining progress
payments be made payable to the Debtor *and IFIC*. *See* Order of
March 6, 2006. This allowed IFIC to ensure that the Debtor would
pay its subs and suppliers.

The Debtor encountered another problem related to the Manor
job. It was unable to complete the work on time so the parties
agreed to extend the term of the contract. *See* Debtor's Motion

---

[2]Neither party offered the Contract into the record; however,
they appear to agree on certain contract terms. *See* generally
pleadings, briefs and transcript.

for Authority to Settle Delay Damage Claim, ¶ 3.  This caused the Debtor to incur additional costs of $45,000 which the District refused to pay.  *Id*.  The Debtor sued the District for that amount plus another $100,000 in delay damages.  *Id.*  The dispute as to delay damages was submitted to mediation and the Debtor agreed to settle that claim for $78,500.  *Id.*  The Debtor filed a motion for authority to settle the delay claim on the terms reached at mediation.  The motion specifically limited itself to the delay damage claim.  *See* Motion for Approval, ¶5.  No party—including most importantly, IFIC—objected to this resolution.  The Court's Order approving that settlement reiterated that it was limited to the delay damage claim.  *See* Order dated June 8, 2006.

This, however, did not end the matter as the District refused to pay the settlement amount.  At this time, the District believed that the Debtor's work on the Manor job was inadequate. T-22  Remediation would cost at least another $33,600 and perhaps even exceed the $56,000 which the District was holding in contract retainage.  T-23.  The District argued—at least implicitly—that it need not tender the money settling the delay claim until it resolved what it owed to complete the entire job. T-21.  At the hearing on the Committee's Motion to Compel Enforcement of the Settlement Agreement, this Court flatly rejected that premise.  T-22.  Whereupon, the District confirmed

3

to the Court that the delay damage funds would be tendered
forthwith.   T-24.   Those funds are presently in Committee
Counsel's escrow account.   *See* Committee's Brief, 3 n.3.

The Court, however, has not yet granted the motion to
compel.   That is because IFIC has asserted a prior right to the
settlement funds.   *See* IFIC's Answer and Cross Motion.   It
maintains that it has not yet been reimbursed for paying bond
claims totaling $78,492.   *See id*, ¶ 4.   It also contends that
there another $86,750 in pending claims.   *Id.* ¶ 6.   Any funds not
yet paid by the District, IFIC concludes, rightly belong to it.

*The Arguments*

IFIC offers three reasons why the settlement funds belong
to it: first, the Court entered an Order of adequate protection
requiring such funds to be made payable to the Debtor *and IFIC*;
second, IFIC is equitably subrogated to the delay damage fund;
and third, those funds are held in trust for IFIC's benefit.   *See*
IFIC's Answer and Cross Motion and its Letter Brief.   To
considerable extent, the Committee is in agreement with IFIC's
arguments.   That is to say, it does not deny that the March 6
Order granted certain protections to IFIC.   Neither does it deny
that IFIC has equitable subordination rights in certain funds or
that the Indemnity Agreement impresses certain payments with a
trust.   Where the Committee parts company with IFIC is on the
question of how far those protections and rights extend.   To the

4

Committee, neither the March 6 Order nor the bond documents extend those rights to the delay damage settlement. Relying principally on the language in the two bonds, the Committee contends that IFIC's superior interest is limited to the amounts payable under the contract. Any additional recovery by the Debtor (e.g., a delay damages award), it concludes, are property of the bankruptcy estate. *See* Committee's Brief.

*The March 6 Order*

IFIC maintains that this Court's Order of March 6, 2006, provides it with a paramount interest in the settlement funds. *See* IFIC's Answer and Cross Motion, 2. That order, the parties will recall, resolved IFIC's Motion for Relief from Stay or Adequate Protection. It provided that all "bonded contract funds" be made jointly to the Debtor and IFIC so that IFIC could ensure that the Debtor's subs and suppliers were being paid. IFIC maintains that the terms "bonded contract funds" necessarily includes a claim for delay damages. The Order, however, does not define the term. The Court recalls that the underlying motion referenced what it called "bonded contracts." It did so by bond number, date of issuance, the principal (surety nomenclature for the contractor), the obligee (the school districts), the project name, and the contract price. Important for present purposes is the cost stated for the Manor job, $2.047 million. That still does not help the Court determine whether the delay damage

5

settlement is "bonded contract funds."[3]  For that, the Court must analyze the bond documentation which supported IFIC's motion for relief.

The Court begins with the bonds themselves.  Those instruments serve to protect the contracting public entity (here, the District in the case of the performance bond) and subcontractors and suppliers (in the case of the payment bond).  *See* 8 Pa.C.S.A. § 193.  Neither define to what extent IFIC might be able to assert an interest in any money paid by the District to the Debtor.  The Indemnity Agreement, on the other hand, comes closer to the issue.  It serves to protect IFIC, as the bond issuer, to the extent it must pay claims made on the bonds.  It provides that the Debtor assigned to IFIC "all the rights of the [Debtor] in, and growing in any manner out of, all contracts referred to in the bonds, or in, or growing in any manner out of, the Bonds." *See* Exhibit A to Motion for Relief, Indemnity Agreement, ¶ THIRD, p. 2.  Would this include any money collected by the Debtor for a delay damage claim?

The Committee say no.  It points out that under Pennsylvania law a surety is not liable for a delay damage claim.  *See*

---

[3]The Court does not make much of the Committee's point that IFIC's Motion for Relief requested protection only for *progress* and *retainage* payments, never mentioning delay damages.  *See* Committee Brief, n.5.  That may very well be explained by IFIC not anticipating at that time that the Debtor might have a delay damage claim in the future.

Committee's Brief at 8 citing *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc.*, 398 Pa.Super. 86, 92, 580 A.2d 853, 856 (Pa.Super.1990). From that it extrapolates that a bonding company's security cannot extend to a delay damage award. Committee's Brief, 9. But that does not necessarily follow. A surety may not be *liable* for delay damages but its principal (i.e., the contractor) may have assigned to its surety a claim for delay damages which it might recover from the owner of the property on the bonded job. The *Salvino* decision is based on the terms of the bond, *see C. Arena & Co., Inc., v. St. Paul Fire & Marine Ins. Co.*, 1993 WL 452184 *4 (E.D.Pa.)(explaining that *Salvino* held that text of bond determined scope of bond's coverage), while the Committee's premise derives from language in the Indemnity Agreement. Its reliance on *Salvino* is misplaced.

While the Court rejects that argument, it agrees with the Committee on the ultimate outcome, albeit for different reasons. The Court's focus here is not on the bonds but on the Indemnity Agreement. It provides, in pertinent part:

**ASSIGNMENT**

THIRD:    The Contractor, the Indemnitors hereby consenting, will assign, transfer an set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement … (a) All the rights of the Contractor *in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds;* … (e) Any and all

7

> *percentages retained* and any and all *sums*
> *that may be due or hereafter become due on*
> *account of any and all contracts referred to*
> *in the Bonds* and all other contracts referred
> to in the Bonds and all other contracts
> whether bonded or not in which the Contractor
> has an interest.

*See* Indemnity Agreement, ¶ THIRD, Ex. A to IFIC's Motion for

Relief (emphasis added).  The Court finds such broad language to

be unhelpful in determining if IFIC's security includes a delay

claim.  Moreover, the issue is not illuminated by the contract as

neither party made it part of the record.  Stated simply, the

record, such as it is on this point, is vague; it does not allow

the Court to make a *clear* inference that the delay damage award,

along with the progress and retainage payment, constitute "bonded

contract funds."  And where there is such ambiguity, the contract

provision in question may be interpreted against the party which

drafted it.  *See Raiken v. Mellon,* 399 Pa.Super. 192, 198, 582

A.2d 11, 13 (Pa.Super. 1990); *see also Donegal Mutual Ins. Co. v.*

*Raymond*, 899 A.2d 357, 361 (Pa.Super.2006) (applying same

principle of interpretation to an insurance contract).  In this

case, the drafter is IFIC.  The Court finds that neither the

March 6 Order nor the  documents underlying IFIC's Motion make

the delay damage funds property of IFIC.

*Equitable Subrogation*

Alternatively, IFIC asserts that it possesses an equitable

right of subrogation in those funds which is superior to that of

8

the estate.  Under § 541(a)(1) of the Bankruptcy Code, property

of the estate consists of "*all* legal or *equitable interests* of

the debtor in property as of the commencement of the case."

(emphasis added)  While that provision is interpreted broadly,

*see United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-205,

103 S.Ct. 2309, 2313-2314, 76 L.Ed.2d 515 (1983); while it

extends to property "wherever located and by whomever held," *see*

11 U.S.C. § 541(a)); and while it includes the debtor's legal,

equitable and possessory interests, *see Mays v. United States (In

re Mays),* 85 B.R. 955, 960 (Bankr.E.D.Pa 1988) (citations

omitted), there are exceptions to this rule.  Among those

exceptions is "[p]roperty in which the debtor holds, as of the

commencement of the case, only legal title and not an equitable

interest …"  11 U.S.C. § 541(d).  "To the extent that such an

interest is limited in the hands of the debtor, it is equally

limited in the hands of the estate …" In re Columbia Gas, 391

F.3d 190, 210 (3d Cir.2004).  "'Although section 541 [of the

Bankruptcy Code] defines property of the estate, we must look to

state law to determine if a property right exists and to stake

out its dimensions.'" *Universal Bonding Ins. Co. v. Gittens &

Sprinkle Enter., Inc*., 960 F.2d 366, 369 (3d Cir.1992) (quoting

*In re Nejberger,* 934 F.2d 1300, 1302 (3d Cir.1991)); *see also

Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59

L.Ed.2d 136 (1979) ("Congress has generally left the

9

determination of property rights in the assets of a bankrupt's estate to state law.").

The equitable right of subrogation is recognized under Pennsylvania law. *See Jacobs v. Northeastern Corporation,* 416 Pa. 417, 420-21, 206 A.2d 49, 50 (1965) (holding that doctrine applies to public construction project). Nowhere is equitable subrogation more appropriate or common than in the context of suretyship. *In re Alcon Demolition, Inc.*, 204 B.R. 440, 446 (Bankr.D.N.J.1997). Indeed, the United States Supreme Court has noted that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37, 83 S.Ct. 232, 235, 9 L.Ed.2d 1990 (1992). Where a surety performs or pays subcontractors to perform pursuant to a performance and payment bond, it has rights to reimbursement from the *remaining contract funds*. *Prairie State Nat'l Bank,* 164 U.S. 227, 232-33, 17 S.Ct. 142, 144 (applying equitable right of subrogation to surety who completes contract); *Henningsen v. United States Fid. & Guar. Co.,* 208 U.S. 404, 410, 28 S.Ct. 389, 391, 52 L.Ed. 547 (1908)(applying that same right to surety completes contract or, if not called upon to complete, pays laborers and materialmen). Relying on *Pearlman*, *supra*, and subsequent case law expanding that holding, IFIC maintains that

10

it is equitably subrogated to Debtor's right to collect that
amount from the District from whatever source.  IFIC's Cross
Motion, ¶ 7; IFIC's Letter Brief, 3-4.  For its part, the
Committee argues that IFIC's reliance on *Pearlman* is misplaced.
It reads *Pearlman* to limit the rights of subrogation of the
surety to *retained* contract funds.  *See* Committee Brief, 6.  It
reads related authority to limit such rights to *unearned progress*
payments as well.  *Id*.  That, the Committee concludes, is as far
as IFIC's equitable rights extend here.

    The Court's reading of *Pearlman* is consistent with that of
the Committee.  The *Pearlman* holding is limited to retained
funds.  371 U.S. at 141, 83 S.Ct. at 237.  There is no mention of
the surety having equitable rights in anything else.  Subsequent
case law extends *Pearlman* to the rights of the surety to contract
receivables, i.e., progress payments.  *See In re Ram Constr. Co.,
Inc.*, 32 B.R. 758, 761 (Bankr.E.D.Pa. 1983); *Balboa Ins. Co. v.
United States*, 775 F.2d 1158, 1163 (Fed.Cir.1985)(holding that
doctrine applies equally to earned progress payments); *see also*
J. Michael Franks and Michael E. Evans, *A Defense of Established
Landmarks: Claims of Construction Sureties to Contract Funds
Under Chapter 11*, 25 Tort & Ins.L.J 28, 34 (Fall 1989)("[O}nce a
surety's interest by way of subrogation comes into existence, it
should reach both retainage and progress payments.")  Moreover,
none of the cases cited in IFIC's Letter Brief persuade the Court

11

that such rights would extend to the claim at issue here.  *See* Letter Brief, 3.  Each of them, in one way or another, is based on a provision in the contract or is otherwise distinguishable. The Court will highlight the pertinent aspect of each cited case to demonstrate the point.

*Pearlman* of course needs no further analysis as the holding's limits are clear.  Neither does *Lacy*,[4] given that it is not disputed that earned and unpaid progress payments are subject to the surety's equitable right.  As to *Dutcher*,[5] the surety's subrogation rights were held to include extra costs associated with change orders.  378 F.2d at 871.  But in that case, the contract in question specifically provided for what it termed "changed conditions."  378 F.2d at 866-67.  Essentially the same holding is found in *Aetna*[6] as to early completion bonuses and in *Cummins*[7] for a rebate from the government to the contractor of a liquidated damages assessment.  *See* 182 F.Supp. at 673; 81 F.Supp. at 195.  In *Alliance*,[8] the surety successfully asserted subrogation rights to an "equitable adjustment" which the debtor-

---

[4] *Lacy v. Maryland Ins.Co.*, 32 F.2d 48, 51 (4th Cir.1929)(holding that subrogation right not limited to retainage but includes current estimates as well).

[5] *In re Dutcher Constr. Corp.*, 378 F.2d 866 (2d Cir. 1967)

[6] *Aetna Cas. & Sur.Co. v. Port of New York Authority*, 182 F.Supp. 671, 674 (S.D.N.Y.1961)

[7] *In re Cummins Const. Corp.*, 81 F.Supp. 193, 202 (D.Md.1948)

[8] *In re Alliance Prop., Inc.*, 104 B.R. 306 (Bankr.S.D.Ca.1989).

12

contractor blamed on the government.  However, the Court would specifically find while "the record is not clear as to which portion of this fund is attributable to retentions, progress payments or contract damages, … the inescapable fact is that the fund is part of the *final payment on the contract*."  104 B.R. at 311.  Finally, in *Alcon*[9]—the case first brought to the Court's attention at the hearing— the Debtor was terminated by its general contractor for failing to pay subcontractors.  Its contract with the general contractor provided that such disputes would be submitted to arbitration.  The Debtor obtained an arbitration award against which the surety asserted subrogation rights.  The Court would rule in favor of the surety finding that its rights of subrogation were "identifiable to the contract."  204 B.R. 448.

There is a common thread to all of these cases: each award—and, thereby, the surety's subrogation right—derived from some provision in the contract.  In the present case, the contract between the Debtor and District has not been made part of the record.  Thus, the Court cannot determine if a delay damage claim has some nexus with the contract or is wholly independent of it.  The Court's own research, meanwhile, turned up one case in which a surety unsuccessfully sought to subrogate itself to a contractor's delay damage claim.  *See Westech Corp.*

---

[9]*In re Alcon Demolition, Inc.*, 204 B.R. 440 (Bankr.D.N.J.1997)

13

*v. United States*, 20 Cl.Ct. 745 (Cl.Ct. 1992).  In *Westech*, the
Federal Claims Court would deny the standing of a surety who
sought to recover for delay and acceleration damages suffered by
the contractor.  *Id*. at 749.  It noted that the surety's ability
to recover such damages is beyond the scope of equitable
subrogation.  *Id*. at 750.  Accordingly, the Court finds that
IFIC's has not established a right of equitable subrogation in
the delay damage settlement fund.

*The Delay Damage
Award as Trust Funds*

For its final argument, IFIC returns to the Indemnity
Agreement.  There, it points to the provision that "all monies
due and to become due under any contract or contracts covered by
the Bonds are *trust* funds."  *See* Indemnity Agreement attached as
Exhibit A to Motion for Relief, paragraph FOURTH.  (emphasis
added)  IFIC maintains that this language establishes the
intention of the parties to create an express trust under
Pennsylvania law.  *See* IFIC's Letter Brief, 5.  For its part,
the Committee contends that the parties did not intend to include
a delay damage claim in the trust paragraph of the Indemnity
Agreement.  *See* Committee Brief, 10.  Those funds are defined by
the amount of the bond, $2.047, million and would not include
delay damages.  To the extent that the contract is vague on this
point, their argument continues, it must be construed against the
drafter (IFIC, in this case).  *Id*.

14

The Court would agree with the Committee but not for the reasons offered. Unlike the Committee, the Court the does find that the issue turns on vagueness. To the contrary, the operative provision is quite clear; it is found not in the bonds but in the Indemnity Agreement. In pertinent part, that agreement provides:

**TRUST FUND**

FOURTH: *If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof*, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, *it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise,* for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

*See* IFIC's Motion for Relief, Ex. A, Indemnity Agreement, ¶ FOURTH (emphasis added). IFIC's trust claim is based on the second emphasized excerpt from paragraph FOURTH of the Indemnity

15

Agreement: "all monies due and to become due under any contract

or contracts covered by the Bonds are trust funds." The fault

with that argument is that it ignores a condition precedent which

is the first excerpt given emphasis.  By its express terms, the

Indemnity Agreement requires that the construction contract first

prohibit assignment of the contract funds before such funds may

be impressed with a trust.  Is that demonstrated by this record?

It is not.  To begin with, IFIC's Cross Motion neither

pleaded this condition precedent[10] nor, for that matter, did it

plead the existence of a trust.  In fact, this argument would not

be made until IFIC submitted its Letter Brief after the hearing.

Even there, neither the Indemnity Agreement nor the construction

contract were attached to the brief or otherwise made part of the

record.[11]  What is the effect of that omission?

Where a cause of action is founded on a condition precedent,

the plaintiff has the burden of proving that such condition was

satisfied.  *See First Tennessee Bank National Association v.*

*Barreto,* 268 F.3d 319, 328 n.6 (6th Cir.2001)(noting most

---

[10]The Federal Rules of Civil Procedure require that conditions
precedent be pleaded.  *See* F.R.C.P. 9(c), incorporated by B.R. 7009.

[11]Indeed, it was IFIC's use of brackets in the first words of the
excerpt cited in support of its trust argument that prompted the Court
to investigate whether all of the terms of that provision of the
Indemnity Agreement were set forth.  *See* IFIC's Letter Brief, 4.  But
as that document was not made part of the record, the Court had to
look elsewhere.  The Indemnity Agreement was attached as an exhibit in
support of IFIC's Motion for Relief, which is where the Court found
it.

jurisdictions, including federal law, place the burden of proof on the plaintiff to prove that the condition precedent was satisfied); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1008 (3rd Cir.1980) (applying Pennsylvania law that plaintiff had the burden of showing that the borrowers were solvent as a condition precedent to recovery for breach of defendant's promise).  A leading commentator confirms this.  2 *Moore's Federal Practice* § 9.04[4] (2d ed.)("Rule 9(c) does not alter the burden of proof on issues of conditions precedent").  Without a copy of the underlying contract, the Court cannot tell, then, whether that condition precedent was satisfied.[12]  Accordingly, IFIC's claim that the delay damage settlement are trust funds must fail.

*Laches*

A final issue raised by the Committee is the timing of IFIC's opposition.  It points out that IFIC did not object to the Debtor's proposed settlement of the delay damage claim.  T-13.  IFIC acted only after it became apparent that the amount of money

---

[12]Coincidentally, IFIC was confronted with this very same issue within the last few months.  In a case before Chief Judge Sigmund of this Court, IFIC had sued a contractor debtor alleging that it was the victim of fiduciary fraud on the contractor-debtor's part.  *See International Fidelity Insurance Company v. Marques (In re Marques),* 2006 WL 3850025 (Bankr.E.D.Pa.)  It attempted to prove the existence of trust fund in certain contract payments.  It relied on the very same provision in an indemnity agreement in that case.  *Id*. *2.  And just as in this case, it failed to make the construction contact part of that record.  *Id*. *4.  That prevented the Court from determining whether the condition precedent to a trust had been satisfied.  *Id*. *7.

held by the District as retainage—money to which IFIC would be otherwise equitably subrogated—was diminishing.  *See* Committee Brief, 10.  Realizing that it might not get any money from the District from the contract retainage, the Committee goes on, IFIC "chose the path of least resistance" and claimed a right in the delay damage funds.  *Id.*; T-13.  Moreover, the Committee went on, the amount of delay damage settlement is almost exactly the amount that IFIC has paid in bond claims.[13]  IFIC, the Committee concludes, would opportunistically benefit from another's work. *Id.*

Implicitly, the Committee is invoking the doctrine of laches to bar IFIC's claim.  This doctrine has been defined as principally a question of the inequity of permitting a claim to be enforced.  *Crawford Central School District v. Pennsylvania Labor Relations Board,* 1992 WL 276767 *5(Pa.Com.1992) *rev'd on other grounds*, 618 A.2d 1202 *citing Blacks Law Dictionary.*  Other general definitions define laches as a failure to assert one's rights in a timely manner, resulting in prejudice to the opposing party.  *Western Pennsylvania Water Co. v. Board of Property Assessment Appeals,* 124 Pa.Cmwlth 133, 143, 555 A.2d 1357, 1362 (1989).  Laches is an equitable doctrine which depends upon both inexcusable delay and prejudice to the other party.  *Richland Tp. Planning Comm. v. Bobiak,* 122 Pa.Cmwlth. 624, 627, 552 A.2d 1143,

_____

[13]Indeed, it is a difference of no more than $8.

18

1146 (1989).

The Court finds that IFIC's conduct runs afoul of this doctrine.  It took no part in the settlement of the delay damage claim, stood by while it was submitted for approval and ultimately approved, and then sprung into action when the District had refused to tender the settlement funds.  Indeed the Court could not help notice—just as the Committee did—that IFIC's emergence coincided with the news that the amount held by the District in retainage began to diminish over time.  There was no excuse offered for why IFIC waited as it did and the Court independently observes none.

Moreover, granting the settlement of the delay damage claim to IFIC would be grossly unfair to the parties who did the work to create that fund.  Simply put, IFIC would profit at their expense.  For that reason alone, the Court finds that the creditors of this estate would be prejudiced if this Court awarded that money to IFIC.  Accordingly, this Court will apply the equitable doctrine of laches to deny IFIC's claim.

*Conclusion*

The Court rejects all arguments offered by IFIC as to why it is entitled to the delay damage settlement money.  The March 6 Order did not intend to encompass such a recovery, equitable subrogation rights do not extend that far, and such funds are not subject to an express trust.  Furthermore, the Court finds laches

19

on the part of IFIC in asserting an entitlement to the funds in

question.   Accordingly, the Court will deny IFIC's claim to the

delay damage funds and grant the motion to compel as requested by

the Committee.

An appropriate order follows.


By the Court:

_____

Stephen Raslavich
United States Bankruptcy Judge

Dated:    January 23, 2007

## In the United States Bankruptcy Court
## For the Eastern District of Pennsylvania

In re                              : Chapter 11
                                   :
Stone Creek Mechanical, Inc.       :
                                   :
                 Debtor(s)         : Bankruptcy No. 04-11255 SR

_____

# <u>Order</u>

    **And Now**, upon consideration of the Creditors Committee's Motion to Compel Enforcement of the Debtor's settlement of its delay damage claim against the Pennsbury School District, International Fidelity Insurance Company opposition thereto, the parties brief, after a hearing held on Novembere 9, 2006, and for the reason set forth in the attached Opinion,  it is hereby:

    **Ordered,** that the Committee's Motion to Compel is Granted and the sum of $78,500 presently held in escrow be released to the Debtor's estate.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:  <u>January 23, 2007</u>

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for the Creditors Committee
Bonnie R. Golub, Esquire
WEIR & PARTNERS LLP
Suite 500, The Widener Bldg
1339 Chestnut Street
Philadelphia, PA 19107

Counsel for International Fidelity
Insurance Company
Robert T. Carlton, Jr., Esquire
WOLFF & SAMSON PC
Two Penn Center, Suite 1310
1500 JFK Blvd
Philadelphia, PA 19102

Counsel for Debtor
Allen B. Dubroff, Esquire
JAFFE FRIEDMAN SCHUMAN NEMEROFF
APPLEBAUM & McCAFFERY PC
7848 Old York Road, Suite 200
Elkins Park, PA 19027